UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JOHN F. KARL, JR., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:23-cv-00028 (AJT/JFA) |
| | ) | |
| CHARLES P. RETTIG, | ) | |
| *in his capacity as Commissioner of the* | ) | |
| *Internal Revenue Service, et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff John F. Karl, Jr. ("Karl") seeks to establish the priority of his judgment lien over a federal tax lien with respect to any distributions from the Estate of Linda J. Solomon (the "Estate"). Defendant Jonathan R. Bronley, Administrator, C.T.A., d.b.n. (the "Administrator") of the Estate has filed a Motion to Dismiss for Lack of Subject-Matter Jurisdiction [Doc. No. 8] (the "Motion").[1] Upon consideration of the Motion, the various memoranda in support thereof and in opposition thereto, the arguments by counsel at the April 5, 2023 hearing, and for the following reasons, the Motion is DENIED.

**I. BACKGROUND**

Plaintiff Karl is an attorney who previously represented Linda J. Solomon ("Solomon") in employment litigation against the United States Department of Agriculture ("USDA"). [Doc. No. 1] at ¶¶ 3-4. As part of the retainer agreement, Solomon agreed to pay Karl $425 per hour plus

---

[1] The United States, as the party in interest in place of Charles P. Rettig, the Commissioner of the Internal Revenue Service, also filed a supplemental brief, [Doc. No. 20], but not a separate motion. In its initial brief, the United States sought dismissal based on the Tax Exception to the Declaratory Judgment Act. All parties filed additional briefs following the April 5, 2023 hearing.

costs, due upon settlement or entry of judgment. *Id.* at ¶ 5. Karl filed suit in the United States

District Court for the District of Columbia, and after the case was twice remanded by the United

States Court of Appeals for the District of Columbia Circuit following two separate grants of

summary judgment, Karl secured a settlement offer from the USDA for $999,999, which Solomon

accepted. *Id.* at ¶¶ 6-9. Thereafter, Solomon requested that Karl withdraw from representing her,

and the district court granted Karl's motion to withdraw. *Id.* at ¶ 10. Solomon then signed a

settlement agreement with the USDA on substantially the same terms, except that payment was to

be made to Solomon directly rather than through Karl's attorney trust account. *Id.* at ¶ 11. Solomon

then allegedly breached the contract she had with Karl and refused to pay him $739,670[2] as owed

for legal fees, $8,281.76 as owed in costs, and by not having the settlement amount paid into Karl's

attorney trust account. *Id.* at ¶¶ 12-13.

Karl asked the district court to impose an equitable lien on the settlement proceeds, but the

court rejected that request because the District of Columbia has no statutory lien provision. *Id.* at

¶ 14. Instead, the district court suggested Karl file suit in D.C. Superior Court, which he then did.

*Id.* at ¶¶ 14-15. After Solomon failed to show up at the first two trial dates, she died on her way to

the third trial. *Id.* at ¶ 15. A representative for the Estate was appointed, and the D.C. Superior

Court ultimately entered judgment in the amount of $747,951.76 in Karl's favor in March 2019,

and in November 2019 the court ordered that the judgment "shall bear interest at the legal rate

from March 14, 2019." *Id.* at ¶ 16. Karl filed a copy of the judgment in Fairfax County Circuit

Court in May 2019 and the post-judgment interest award in November 2021. *Id.* at ¶ 17.

---

[2] Karl contends this is the lodestar based on "1,713.9 hours legal services rendered by him and attorneys working under his direction . . . calculated at the retainer rate of $425." [Doc. No. 1] at ¶ 12. However, 1,713.9 hours at $425 per hour amounts to $728,407.50.

The Estate is currently being administered by the Commissioner of Accounts of the Circuit Court of Fairfax County (the "Commissioner") in accordance with Virginia law. [Doc. No. 9] at 4. The Commissioner filed a report on January 24, 2023 finding that Karl's claim against the estate did not constitute an attorneys' fee lien or judgment creditor's lien, and he determined the IRS had priority over Karl's claim with respect to any taxes owed. *Id.* at 4-5. Karl filed his objections to the report, which are now pending before the Fairfax County Circuit Court. *Id.* at 5.

On January 6, 2023, Karl filed a three Count Complaint to establish the priority of his judgment lien over any federal tax lien, asserting federal question jurisdiction under 28 U.S.C. § 1331 based on federal the Tax Lien Act, 26 U.S.C. § 6323 and the full faith and credit clause of the U.S. Constitution. More specifically, in Court One, Karl seeks relief under the Tax Lien Act, 26 U.S.C. § 6323(a), [Doc. No. 1] at ¶¶ 19-21, which provides in relevant part as follows:

> The lien imposed [in favor of the United States] by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

26 U.S.C. § 6323(a). Section 6321, referenced therein, states:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. In support of this claim, Karl contends that (1) he qualifies as a judgment lien creditor under § 6323(a); (2) before any notice of tax lien by the IRS was filed, he filed notice of his judgment and interest with the Fairfax County Circuit Court Clerk, and therefore met the requirements of § 6323(f), as required in § 6323(a); and (3) he is entitled to priority over the IRS. [Doc. No. 1] at ¶¶ 20-21. In Count Two, Karl alleges that, in any event, he is entitled to super priority over an IRS tax lien under § 6323(b)(8), which provides as follows:

3

> Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid . . . [w]ith respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforceable against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, except that this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States.

26 U.S.C. § 6323(b)(8). In Court Three, Karl alleges that the judgment he obtained in the D.C. Superior Court has priority over any federal tax lien under the Full Faith and Credit Clause. [Doc. No. 1] at § 26-27.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction with specific jurisdictional requirements and limitations, possessing only the jurisdiction authorized to them by the United States Constitution and federal statute. *United States* ex rel. *Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009); *see also United States v. Mitchell*, 683 F. Supp. 2d 427, 428 (E.D. Va. 2010). Rule 12(b)(1) is the appropriate vehicle to contest subject matter jurisdiction, and when confronted with a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing the court's subject matter jurisdiction. *Trinity Outdoor, L.L.C. v. City of Rockville*, 123 F. App'x 101, 105 (4th Cir. 2005) (per curiam). A Rule 12(b)(1) motion to dismiss may challenge the existence of subject matter jurisdiction over the case, separate and apart from the facts alleged in the pleadings. *Pro-Football, Inc. v. Blackhorse*, 62 F. Supp. 3d 498, 502 (E.D. Va. 2014) (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)). Importantly, in this context, the district court "may then go beyond the allegations of the complaint" to determine independently the existence of jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005). If a district court lacks subject matter jurisdiction over an action, the action

must be dismissed. *Jadhav*, 555 F.3d at 347. In considering whether the Court has subject matter

jurisdiction, or whether it should exercise that jurisdiction, it has considered the following statutes

and doctrines that have figured into the parties' respective positions.

**A. The Probate Exception**

The probate exception has its roots in the exclusion of probate matters from the English

Court of Chancery and the Judiciary Act of 1789. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006).

In *Marshall*, the Court reined in the broadened view of the probate exception that lower courts had

adopted. *Id.* at 305. *Marshall* examined whether a federal court had jurisdiction over a tortious

interference counterclaim that awarded the counterclaimant compensatory damages less what was

recovered in a related state probate action. *Id.* at 300-01. The Court held that federal jurisdiction

was permitted, and the probate exception did not apply. *Id.* at 305.

Prior to *Marshall*, the Court last had occasion to review the probate exception in *Markham*

*v. Allen*, 326 U.S. 490 (1946). In *Markham*, the Court held:

> It is true that a federal court has no jurisdiction to probate a will or administer an
> estate . . . . But it has been established by a long series of decisions of this Court
> that **federal courts of equity have jurisdiction to entertain suits 'in favor of**
> creditors, legatees and heirs' and other **claimants against a decedent's estate 'to**
> **establish their claims' so long as the federal court does not interfere with the**
> **probate proceedings** or assume general jurisdiction of the probate or control of the
> property in the custody of the state court . . . . [W]hile a federal court may not
> exercise its jurisdiction to disturb or affect the possession of property in the custody
> of a state court . . . it may exercise its jurisdiction to adjudicate rights in such
> property where the final judgment does not undertake to interfere with the state
> court's possession save to the extent that the state court is bound by the judgment
> to recognize the rights adjudicated by the federal court.

326 U.S. at 494 (emphasis added). But what constitutes "interference" has puzzled lower courts in

the years since *Markham*. *Marshall*, 547 U.S. at 311. The Court sought to clarify this in *Marshall*:

> [W]e comprehend the 'interference' language in *Markham* as essentially a
> reiteration of the general principle that, when one court is exercising *in rem*
> jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the

same *res* . . . . Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Id.* at 311-12.

In the seventeen years since *Marshall* was decided, the Fourth Circuit has cited it only once. In *Lee Graham Shopping Center, LLC v. Estate of Kirsch*, 777 F.3d 678 (4th Cir. 2015), the Fourth Circuit held that a federal court was not precluded under the probate exception from interpreting the terms of a partnership agreement to determine whether a transfer of interest from one trust to another was void as of the date of the decedent's death. 777 F.3d at 680-81. In summarizing *Marshall*, the Fourth Circuit noted the "narrow" nature of the probate exception:

[I]t applies only if a case actually requires a federal court to perform one of the acts specifically enumerated in *Marshall*: to probate a will, to annul a will, to administer a decedent's estate; or to dispose of property in the custody of a state probate court. A case does not fall under the probate exception if it merely impacts a state court's performance of one of these tasks.

*Id.* at 681. In specifically finding that the probate exception did not apply, the Fourth Circuit compared the "contract interpretation question" therein to the "tortious interference claim in *Marshall*" and determined that while it "may affect the outcome of the distribution of estate assets . . . [it] requires neither an interpretation of a will nor a distribution of estate assets." *Id.* at 681 n.4.

**B. Declaratory Judgment Act and the Tax Exception Thereto**

The Declaratory Judgment Act provides as follows:

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). The carve-out within the Declaratory Judgment Act is commonly referred to as the "Tax Exception."

## C. Anti-Injunction Act

After Congress enacted the first income taxes to finance the Civil War, taxpayers ran to the courthouse doors, sometimes with success, to enjoin collection efforts. *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582, 1586 (2021). In response, Congress passed the Anti-Injunction Act, which in its present form provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." *Id.* (citing 26 U.S.C. § 7421(a)). The Act's purpose is to maintain the Government's consistent stream of revenue and only allow challenges to federal taxes after they are paid. *Id.* (citation omitted).

## D. Sovereign Immunity

Absent a waiver, the doctrine of sovereign immunity protects the United States, its officers, and agencies. *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (noting the Government's immunity "save as it consents to be sued"). The waiver must be unequivocal. *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (1992).

## E. Justiciability: Standing and Ripeness

"Article III of the Constitution requires a litigant to possess standing to sue in order for a lawsuit to proceed in federal court." *Ali v. Hogan*, 26 F.4th 587, 595 (4th Cir. 2022) (citation omitted). Without Article III standing, the Court is left without subject matter jurisdiction. *Id.* at 595-96 ("Standing is an 'irreducible constitutional minimum' that must be satisfied in all cases." (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, (1992))). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and

(iii) that the injury would likely be redressed by judicial relief." *Id.* at 2203 (citing *Lujan*, 504 U.S. at 560-61). Additionally, the justiciability doctrine of ripeness must be satisfied and is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Park Hosp. Ass'n v. Dept. of Interior*, 538 U.S. 803, 807-08 (2003) (quoting in part *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

### III. ANALYSIS

The dispositive issue is whether a federal court should decide a federal question that has arisen within the context of state probate proceedings.

### A. Whether Jurisdiction is Affected by the Probate Exception

In contending that the probate exception as articulated in *Marshall* deprives the Court of subject matter jurisdiction, the Defendant Estate Administrator characterizes this action as, in effect, a request that this Court administer an estate already within the jurisdiction of the Fairfax County Circuit Court, given that the estate administration process is entirely codified by state law, *see* Va. Code § 64.2-500, *et seq.*, including in Va. Code § 64.2-528 and -530, pertaining to the priority of liens. [Doc. No. 9] at 3-4. Additionally, the Administrator argues that Karl is essentially asking the Court to improperly "dispose of property that is in the custody of a state probate court." *Id.* at 5. Karl argues the probate exception does not apply because he has raised only federal questions.[3] [Doc. No. 13] at 2. Specifically, he contends that he "does not ask the Court to administer the estate; he does not ask the Court to *dispose* of property that is in the custody of the Virginia probate court . . . . does not ask the Court to order any payment." *Id.* at 11 (emphasis in original).

---

[3] A substantial portion of Karl's opposition brief is dedicated to his disagreement with the decision of the Commissioner. *See* [Doc. No. 13] at 3-8. But the decision of the Commissioner does not bear on the jurisdictional issue before the Court and is more appropriately considered within the context of an appeal to the Fairfax County Circuit Court.

Karl clearly is not asking the Court to probate or annul a will, and the dispositive issue for the purposes of the probate exception is whether the Complaint would require the Court to (1) administer the Estate, as contemplated in *Marshall* and *Markham* or (2) dispose of property in the custody of the state probate court. Alternatively, the probate exception is not implicated if the relief that Karl seeks can best be categorized as "merely impact[ing]" the probate proceedings in Fairfax County Circuit Court rather than "interfering" with estate administration. S*ee Lee Graham Shopping Center, LLC*, 777 F.3d at 681.

### i. Administering the Estate

Chapter 5 of Virginia Code Title 64.2, titled "Personal Representatives and Administration of Estates," outlines an administrator's duties, along with, *inter alia*, the priority for debts and demands, including for liens acquired during a decedent's lifetime. *See, e.g.*, Va. Code § 64.2-528, 530. Here, based on federal question jurisdiction, Karl seeks a declaration that his claim has priority over a federal tax lien. Deciding that issue involves a more direct intrusion than in *Marshall* into a role traditionally reserved for state probate courts, where there the tort claim at issue related to a will and whether the damages were to be lessened by any award issued in a separate probate proceeding. The same is true for *Lee Graham Shopping Center, LLC*, where the contract interpretation at issue impacted the underlying assets of the estate. Nevertheless, while determining lien priority is one aspect of the estate administration process and will certainly affect how the property of the Estate is ultimately distributed, this Court's decision about the relative priorities as between two claimants cannot fairly be characterized as a wholesale supplanting of the state probate court's role. Rather, it does nothing more than substitute a federal court for a state court as the deciding tribunal with respect to the narrow federal issue of priority as between Karl and the IRS, a situation similar to any instance where a federal court exercises its concurrent

jurisdiction with a state court. In short, this action will only decide a federal issue necessary for the ultimate resolution of the Estate's administration. In that sense, the Court's exercise of jurisdiction facilitates the Estate's administration, particularly where, as here, the United States would not be bound by a state court ruling adverse to its lien. *See infra* Sec. III(B) (discussing why the *Kapiloff* prerequisite of a state parallel proceeding fails and why the United States would not be bound by the state court's priority determination). Given that the adjudication of any claim against an estate would to some extent affect that estate's administration, *Marshall, Markham* and *Lee Graham Shopping Center, LLC* all involve and accept some level of intrusion onto estate administration; and deciding this priority issue appears to be within the scope of the principle ostensibly adopted in *Markham*—that federal courts are empowered to entertain cases by "claimants against a decedent's estate," of which Karl clearly is, "so long as the federal court does not interfere with the probate proceedings." *Markham*, 326 U.S. at 494.  In these circumstances, adjudicating Karl's claim would "merely impact a state court's performance," *Lee Graham Shopping Center, LLC*, 777 F.3d at 681, not "interfere with the probate proceedings." *Markham*, 326 U.S. at 494. *Cf. Marshall*, 547 U.S. at 315-16 (Stevens, J., concurring in part and concurring in the judgment) (opining that no probate exception exists but nevertheless noting the majority's decision is "narrower in scope than *Markham*"). Accordingly, the probate exception's provision barring the exercise of federal jurisdiction over the administration of an estate does not apply here.

### ii. Disposing of Property in the Custody of the State Probate Court

Under the probate exception, federal courts are not permitted to "dispose of property in the custody of a state probate court." *Lee Graham Shopping Center, LLC*, 777 F.3d at 681. But *Markham* counsels that a declaratory judgment as to a party's rights in an estate does not constitute the federal court's disposition of it. In short, the Court reads *Markham* to stand for the proposition

10

that a federal court can issue a declaratory judgment related to a claimant's rights in a decedent's

estate so long as the federal court does not order the estate's administrator to make a specific

payment, even if that is the net effect. As in *Markham*, a declaration in Karl's favor would:

> declare[] only that petitioner 'is entitled to receive the net estate . . . in distribution, after the payment of expenses of administration, debts, and taxes.' The effect of the judgment [would be] to leave undisturbed the orderly administration of decedent's estate in the state probate court and to decree petitioner's right in the property to be distributed after its administration. This, as our authorities demonstrate, is not an exercise of probate jurisdiction or an interference with property in the possession or custody of a state court.

*Markham*, 326 U.S. at 495. *See also Lefkowitz v. Bank of New York*, 528 F.3d 102, 106 (2d Cir.

2007) ("[W]here exercise of federal jurisdiction will result in a judgment that does not dispose of

property in the custody of a state probate court, even though the judgment may be intertwined with

and binding on those state proceedings, the federal courts retain their jurisdiction."). Thus, Karl's

claims are not precluded by the probate exception.

**B. Discretionary Exercise of Jurisdiction Under the Declaratory Judgment Act and the Tax Exception Thereto**[4]

District courts have great latitude in determining whether to assert jurisdiction over

declaratory judgment actions." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422

(4th Cir. 1998); *see also* 28 U.S.C. § 2201(a) ("In any case of actual controversy within its

jurisdiction . . . any court of the United States . . . **may** declare the rights and other legal relations

of any interested party seeking such declaration") (emphasis added); *Hardnett v. M&T Bank*, 204

---

[4] Karl did not allege in his Complaint that he was seeking relief under the Declaratory Judgment Act. Nevertheless, a declaration of rights is the only relief he seeks. While not originally briefed by the parties, on March 27, 2023, the Court ordered supplemental briefing as to whether "it should exercise its discretionary jurisdiction to hear the case under the Declaratory Judgment Act." [Doc. No. 18]. *See Public Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights."); *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 241 (1952) ("Previous to [the Declaratory Judgment Act's] enactment there were responsible expressions of doubt that constitutional limitations on federal judicial power would permit any federal declaratory judgment procedure."). Thereafter, Plaintiff and Defendant Bronley submitted supplemental briefs

F. Supp. 3d 851, 862 (E.D. Va. 2016) ("[D]istrict courts possess discretion in determining whether

and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise

satisfies subject matter jurisdictional prerequisites.") (quoting *Wilton v. Seven Falls Co.*, 515 U.S.

277, 282 (1995)); *id.* ("In the declaratory judgment context, the normal principle that federal courts

should adjudicate claims within their jurisdiction yields to considerations of practicality and wise

judicial administration.") (quoting *Wilton*, 515 U.S. at 288). In *United Capitol Ins. Co. v. Kapiloff*,

the Fourth Circuit cautioned that "whenever *a parallel proceeding is pending in state court*, district

courts must also take into account 'considerations of federalism, efficiency, and comity.'" 155

F.3d 488, 493 (4th Cir. 1998) (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371,

376 (4th Cir. 1994) (emphasis added). The Fourth Circuit further identified four factors to consider

in such situations:

> (1) whether the state has a strong interest in having the issues decided in its courts;
> (2) whether the state courts could resolve the issues more efficiently than the federal
> courts; (3) whether the presence of 'overlapping issues of fact or law' might create
> unnecessary 'entanglement' between the state and federal courts; and (4) whether
> the federal action is mere 'procedural fencing,' in the sense that the action is merely
> the product of forum-shopping.

> *Id.* at 493-94 (quoting *Nautilus Ins. Co.*, 15 F.3d at 377).

On the one hand, the *Kapiloff* factors would appear to counsel against the exercise of

jurisdiction. Nevertheless, the Court finds that no state court "parallel proceeding" exists, and thus

the threshold requirement for refusing to exercise declaratory judgment jurisdiction is not met.  In

that regard, the United States is not a party in the Fairfax County Circuit Court action, could not

be properly sued or joined in that state court action, and would not be bound by any decision

concerning the priority of Karl's lien. *See, e.g.*, 28 U.S.C. § 1340 ("The district courts shall have

original jurisdiction of any civil action arising under any Act of Congress providing for internal

revenue"); *Sgro v. United States*, 609 F.2d 1259, 1260 (7th Cir. 1979) ("[W]hen . . . the United

States Government hold[s] a lien for unpaid taxes, federal law governs"); *see also Pac. Mut. Life Ins. Co. v. Am. Nat'l Bank & Tr. Co.*, 642 F. Supp. 163, 165 (N.D. Ill. 1986) (finding federal jurisdiction appropriate "since the suit to determine the validity and priority of the federal lien turns on and arises under federal tax laws").

Ostensibly recognizing the absent predicate for abstaining from the discretionary exercise of declaratory judgment jurisdiction, the United States also contends that the Tax Exception to the Declaratory Judgment Act forecloses Karl's ability to seek declaratory relief. [Doc. No. 20].[5] But as Karl persuasively argues, the Tax Exception relates to the assessment and payment of taxes, not the lien priority of any tax lien that exists. [Doc. No. 26] at 9-10. In rejecting the substance of the position that that the United States advances, the Seventh Circuit has concluded:

> it is our view that the language which excepts federal taxes from the Declaratory Judgment Act is co-extensive with that which precludes the maintenance of a suit for the purpose of restraining the assessment or collection of a tax. It applies to a suit by a taxpayer, but not to a suit by a third party seeking to protect a lien claimed to be superior to that of the [IRS] Collector.

*Tomlinson v. Smith*, 128 F.2d 808, 811 (7th Cir. 1942); *see also Aqua Bar & Lounge, Inc. v. United States*, 539 F.2d 935, 940 (3d Cir. 1976) ("Quite obviously, the Declaratory Judgment Act poses no barrier to a suit by a third party to clear his property of a federal tax lien since the quiet title action specifically mandated by [28 U.S.C.] § 2410 is in substance a suit for a declaratory judgment.").

---

[5] On April 5, 2023, at the conclusion of the hearing, the Court ordered additional briefing on the Tax Exception to the Declaratory Judgment Act and on whether Plaintiff possessed Article III standing to bring suit. Plaintiff and Defendant Bronley both filed supplemental briefs, which the United States then replied to on April 24, 2023. That same day, Plaintiff filed a notice of a recent decision by the Ninth Circuit, [Doc. No. 28], and Defendant Bronley replied thereto, [Doc. No. 31]. On April 26, 2023, Plaintiff filed a Motion for Leave, [Doc. No. 29], seeking an opportunity to address what Plaintiff claims were new arguments advanced by the United States in its April 24 filing. The Court granted Plaintiff's Motion in part, allowing him to file a narrow reply. [Doc. No. 32]. On May 8, 2023 Plaintiff filed his reply. [Doc. No. 34].

Because "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976), and this case is neither a parallel proceeding with the state case nor within the scope of the Declaratory Judgment Act's Tax Exception, the Court will not decline to exercise its discretionary authority under the Declaratory Judgment Act.

### C. Anti-Injunction Act

For reasons similar to why the Tax Exception to the Declaratory Judgment Act does not bar this suit, neither does the Anti-Injunction Act apply.[6] *See Aqua Bar & Lounge, Inc.*, 539 F.2d at 940 (finding the Anti-Injunction Act does not bar third-party suits in a quiet title action over federal tax liens, notwithstanding that necessarily "any challenge to the validity of a federal tax lien . . . interferes with the tax collection process," which is what the Tax Exception and Anti-Injunction Acts sought to prevent).

### D. Sovereign Immunity

The United States contends that it has not waived its sovereign immunity from suit with respect to Karl's claim. While recognizing that the United States is immune from suit absent a waiver, *Sherwood*, 312 U.S. at 586, Karl contends that 28 U.S.C. § 2410 contains such a waiver, to wit,

> the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter . . . to quiet title to . . . real or personal property on which the United States has or claims a . . . lien.

28 U.S.C. § 2410(a)(1), (5). The United States argues the Fourth Circuit in *Kasdon v. United States* affirmed the district court's finding that a quiet title action under § 2410 requires a person to be in actual possession of the property that is subject of the action and that if the validity or invalidity

---

[6] The United States appears to concede this point and has essentially abandoned its reliance on the Anti-Injunction Act, relying instead on sovereign immunity, whether federal question jurisdiction exists, and ripeness. [Doc. No. 27].

of the lien is not at issue, then the action is not one to quiet title.  707 F.2d 820, 822-23 (4th Cir.

1983) (affirming *Kasdon v. G. W. Zierden Landscaping, Inc.*, 541 F. Supp. 991, 995-96 (D. Md.

1982) and adopting its "well-written opinion"). But *Kasdon* was decided within the context of

federal tax liens on a property that the plaintiff had already purchased at a tax sale, which under

Maryland law entitled the purchaser to a certificate that would become void after two years unless

the purchaser filed a foreclosure action to remove any cloud on its title. *Kasdon*, 541 F. Supp. at

995. In short, *Kasdon* was decided within the context of controlling Maryland state law, which

prescribed foreclosure as the appropriate legal avenue for a plaintiff-holder of a certificate of tax

sale. Here, there is no such applicable law counseling against an action under 28 U.S.C. § 2410.

Indeed, courts that have considered cases more akin to this action have found that § 2410 extends

broadly to actions seeking to determine priority with respect to federal tax liens. For example, the

First Circuit held that "section 2410(a)(1) controversies encompass disputes concerning both the

validity and priority of liens." *Progressive Consumers Fed. Credit Union v. United States*, 79 F.3d

1228, 1232-33 (1st Cir. 1996) ("Unlike the plaintiffs in *Kasdon*, [plaintiff] seeks only a

determination of priority between competing liens; it never initiated a foreclosure action and did

not seek to extinguish the federal lien."). Within this Circuit, other district courts have likewise

found no impediment in *Kasdon* to adjudicating priorities. As one court stated, "[t]he majority rule

is that suits to adjudicate lien priority should be construed as claims to quiet title, and therefore,

the United States has consented to suit with respect to such claims." *SunTrust Mortg., Inc. v. U.S.*,

No. RDB-12-3631, 2013 WL 5566173, at *4-5 (D. Md. Oct. 8, 2013) ("[T]he Fourth Circuit [has

not] held that a quiet title action may not be employed to establish the priority of a mortgage over

a federal tax lien without a challenge to the validity of the government's lien.");[7] *see also First*

---

[7] The Court has noted and considered the United States' "disagree[ment] with the holding of [the *SunTrust*] court." [Doc. No. 27] at 5.

*Sentinel Bank v. United States*, No. 1:17-cv-43, 2018 WL 2423000, at \*1-3 (W.D. Va. May 29, 2018) (distinguishing *Kasdon* and finding *SunTrust* and *Progressive* to be more analogous and persuasive in a case where plaintiff sought to establish the priority of its mortgage lien over a tax lien).

For the above reasons, the Court concludes that the United States has waived its sovereign immunity with respect to Karl's claim for declaratory relief with respect to his judgment's priority over, not the extinguishment of, a federal tax lien.[8]

**E. Existence of Federal Question Jurisdiction**

The United States contends that Plaintiff has not adequately alleged any federal question because state law could resolve the federal claim and state law governs whether Plaintiff possesses a qualifying attorney's lien that would thereby implicate 26 U.S.C. § 6323(b)(8).[9] [Doc. No. 27] at 4-5. However, the Supreme Court has instructed that "[t]he effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question." *United States v. Sec. Tr. & Sav. Bank of San Diego*, 340 U.S. 47, 49 (1950). And while § 6323(b)(8) requires that there be an attorney's lien under local law, which is in and of itself not a federal question, the doctrinal basis for the decision in *Security Trust & Savings Bank of San Diego*, together with Plaintiff's constitutional claim under the Full Faith and Credit Clause, confers federal question jurisdiction.

---

[8] Separately, Plaintiff contends that the general waiver within the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, applies. However, the Court need not decide that issue given its findings with respect to § 2410.

[9] "Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid . . . [w]ith respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, **under local law**, holds a lien upon or a contract enforcible [sic] against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, except that this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States." 26 U.S.C. § 6323(b)(8) (emphasis added).

16

**F. Standing**

The Constitution limits courts from hearing cases that do not satisfy several jurisdictional constraints, including the injury in fact component of standing and ripeness. The United States contends that Karl lacks Article III standing since he has not yet sustained an injury in fact and may never do so.

Courts have grappled with traditional standing requirements, and the "injury in fact" requirement specifically, within the context of declaratory judgment actions, which are intended, in large part, to resolve disputes before an injury is sustained. Nevertheless, the constitutional exercise of jurisdiction under the Declaratory Judgment Act is confined to those actions that can meet the requirements for a case or controversy. *See Pub. Serv. Comm'n of Utah*, 344 U.S. at 242-43 ("[T]he propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.").

i. Injury

To establish standing, Karl must establish (1) an injury in fact, (2) traceability to the Defendants, and (3) judicial redressability. *Lujan*, 504 U.S. at 560-61. Here, all three are met.

First, Karl contends that he is injured by virtue of not having been paid on his purportedly properly obtained and recorded lien. [Doc. No. 26] at 6. Plaintiff is owed attorney's fees for substantial work that began in 2007 – more than fifteen years ago. Plaintiff possesses a lawful judgment that was recorded in Fairfax County in 2021. His failure to receive payment for his work is concrete, particularized, and actual.

Second, while Plaintiff's grievances are largely aimed at Solomon and the Estate's prior executors, the Administrator has to some degree stepped into their shoes. Solomon is deceased,

17

and the prior executors do not now possess any ability to administer the Estate. Therefore, because the Administrator is the party charged with the Estate's administration, that Plaintiff has not been paid is fairly traceable to the Administrator. Additionally, any tax obligations owed to the United States by the Estate, and the United States' non-speculative efforts to seek priority, are likewise traceable to the Administrator.

Lastly, judicial relief in Plaintiff's favor would clear the way for him to receive payment and his claim is one that presents the opportunity for favorable judicial redress.

Accordingly, Plaintiff has established that he has standing.

### ii. Ripeness

The Supreme Court has summarized its precedent and the "case-or-controversy requirement" in declaratory judgment actions as:

> [b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Specific to ripeness, the Third Circuit has articulated the following test based on *MedImmune*:

> [i]n declaratory judgment cases, we apply a somewhat refined test for ripeness . . . . [W]e look to (1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment.

*Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539-40 (3d Cir. 2017) (internal citations and quotations omitted) (identifying the test as the *Step-Saver* test based on its initial pronouncement in *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643 (3d Cir. 1990)). The Fourth Circuit has not explicitly adopted the *Step-Saver* test. Nevertheless, the Court finds the Third Circuit's approach to addressing the *MedImmune* inquiries useful, workable, and consistent with *MedImmune*, and will apply it here.

18

First, there is clearly adversity between Plaintiff's interests and that of the United States. There appears to be insufficient funds in the Estate to satisfy the debts owed to both Plaintiff and the United States and whichever lien is ultimately deemed to have priority will likely recover a greater percentage of their lien than the other. The first factor is satisfied.

Second, a declaratory judgment would conclusively end the dispute with respect to the narrow issue of priority as between the Plaintiff and IRS.[10] Accordingly, this second factor is satisfied. *Cf. Lefkowitz*, 528 F.3d at 106 (finding federal jurisdiction even where a judgment would "not dispose of property in the custody of a state probate court").

Third, there would be utility in the issuance of a judgment. "Practical utility goes to whether the parties' plans of actions are likely to be affected by a declaratory judgment . . . and considers the hardship to the parties of withholding judgment." *Plains All Am. Pipeline L.P.*, 866 F.3d at 543-44 (quoting *NE Hub. Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 344-45 (3d Cir. 2001)). Here, Plaintiff seeks a declaratory judgment that his rights be enforced against the federal government in accordance with federal statutory and constitutional law. Having a federal court opine on these federal principles, particularly given that the state court is not an appropriate forum for a separate suit against the United States, is not without utility. Accordingly, this factor weighs in favor of a ripeness finding.

For the above reasons, the Court finds that this action is ripe in the declaratory judgment context.

## IV. CONCLUSION

For the above reasons, it is hereby

---

[10] Under the doctrine of *res judicata,* as well as the Supremacy Clause, this Court's determination as to priority under, 26 U.S.C. § 6323(b)(8) would be binding in any state court proceedings. *See Neff v. Commonwealth*, 569 S.E.2d 72, 75 (Va. Ct. App. 2002) ("*Res judicata* . . . precludes relitigation of a claim or issue once a final determination on the merits has been reached by a court of competent jurisdiction").

**ORDERED** that the Motion to Dismiss, [Doc. No. 8], be, and the same hereby is,

DENIED.

The Clerk is directed to forward copies of this Order to all counsel of record.

Alexandria, Virginia
June 27, 2023

Anthony J. Trenga
Senior U.S. District Judge

20